433 So.2d 565 (1983)
Isabel BERMUDEZ, As Personal Representative of the Estate of Jose Angel Bermudez, for the Benefit of Said Estate, and Isabel Bermudez, As Surviving Mother, and Alfredo Bermudez, As Surviving Brother, and Isabel Bermudez and Alfredo Bermudez, Individually, Appellants,
v.
FLORIDA POWER & LIGHT COMPANY, a Florida Corporation, Continental Casualty Company, a Foreign Corporation, and the City of Coral Gables, a Municipal Corporation, Appellees.
No. 82-1091.
District Court of Appeal of Florida, Third District.
May 24, 1983.
Rehearing Denied July 11, 1983.
Horton, Perse & Ginsberg, Lawrence B. Rodgers, Miami, for appellants.
Steel, Hector & Davis and Norman A. Coll, Talburt, Kubicki & Bradley and Betsy E. Hartley, Miami, for appellees.
Before SCHWARTZ, C.J., and HENDRY and JORGENSON, JJ.
PER CURIAM.
Plaintiffs in a wrongful death action appeal two orders which, taken together, dismiss with prejudice their complaints against all appellees.
Jose Bermudez was electrocuted on June 14, 1979, when a pole he was holding touched a Florida Power & Light Co. (FPL) power line on property owned by the City *566 of Coral Gables. Appellee Continental Casualty Company is the city's liability insurer. On June 11, 1981, a complaint was filed by Isabel Bermudez as personal representative of the estate of Jose Angel Bermudez, for the benefit of said estate and Isabel Bermudez, as surviving mother and Alfredo Bermudez as surviving brother, and Isabel Bermudez and Alfredo Bermudez, individually.
The complaint alleged that the negligence of FPL and Coral Gables was the cause of Jose's death. The complaint incorrectly named CNA Insurance Company as the city's liability carrier. This original complaint was not served on Coral Gables until December 1, 1981, and on CNA until November 25, 1981. On December 17, 1981, an amended complaint which differed only in its substitution of the correct liability carrier, Continental Casualty, was filed. This complaint was served on FPL on December 23, 1981. Attached to the complaint was an order of the probate court appointing Isabel Torres as Jose's personal representative on July 23, 1981.
The appellees raised affirmative defenses, stating that the appellants did not have the same name as the personal representative and that no personal representative had been appointed before the statute of limitations had run on June 14, 1981. Appellants moved to substitute the name of Isabel Torres for Isabel Bermudez. The trial judge denied their motion and granted appellees' motion to dismiss the entire complaint with prejudice, finding that the "action was not timely filed within the period of the statute of limitations by the decedent's personal representative as required by Florida Statute § 768.20, F.S.A., and therefore this Court lacks jurisdiction and the action is barred by the statute of limitations."
It is appellants' contention that the trial court committed reversible error in entering these orders of dismissal. We agree.
We find that the case of Griffin v. Workman, 73 So.2d 844 (Fla. 1954) controls the disposition of the action sub judice. On facts nearly identical to those in the case at bar, the Florida Supreme Court said:
We have the opinion that the circuit court committed reversible error in not allowing the cause to proceed after letters of administration had been issued in the probate proceedings, and in refusing to relate the issuance of the letters back to the time of the beginning of the suit... No fraud or inequity is involved, and no new cause of action would have been presented by allowing the father to prosecute the action to a conclusion. We think, therefore, that the issue is ruled by the ancient doctrine `that whenever letters of administration are granted they relate back to the intestate's or testator's death'.
Id. at 846. The Court went on to find that where the letters of administration are issued after the expiration of the statute of limitations, an amended complaint correcting the allegations of the complaint with respect to plaintiff's capacity to sue will relate back to the date of the filing of the complaint and the action will be deemed commenced within the time limited by statute. Id. at 847 (citing to Douglas v. Daniels Bros. Coal Co., 135 Ohio St. 641, 22 N.E.2d 195, 198 [1939]).
Appellees argue strenuously that Griffin was decided before the 1972 amendments to Chapter 768, Florida Statutes, and that the current Florida Wrongful Death Act, §§ 768.16-768.27, Fla. Stat. (1981), makes it mandatory that an action for wrongful death be filed by the personal representative.[1] Thus, appellees argue, § 768.20 requires the appointment of a personal representative before an action for wrongful death can be commenced. If an action is commenced before a personal representative is appointed, the initial action is a nullity and must be quashed. The word "shall" makes the appointment of a personal representative a condition precedent, thus there can be no relation back. It is well established, however, that whether *567 "shall" is mandatory or discretionary will depend upon the context in which it is used and the legislative intent expressed in the statute. S.R. v. State, 346 So.2d 1018 (Fla. 1977); Allied Fidelity Insurance Co. v. State, 415 So.2d 109 (Fla. 3d DCA 1982). We don't believe the legislature intended the result appellees suggest.
The wrongful death statute in effect when Griffin was decided allowed for two separate and independent causes of action to be brought for a negligently caused death. The administrator of a decedent's estate could maintain a survival action on behalf of the deceased under § 45.11, Fla. Stat. (1951). Secondly, under a strictly delineated hierarchy of widow(er), surviving child, dependent, or administrator, one of the above could maintain a wrongful death action under § 768.02, Fla. Stat. (1951). These statutes provided for different measures of damages and were the subject of considerable litigation and judicial construction. Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975). There was a separate statute, § 768.03, detailing who could sue for, and what damages could be recovered in, the death of a minor child.
In 1967, the legislature created the Florida Law Revision Commission, §§ 13.90-13.996, Fla. Stat. The findings and conclusions of the Commission were described in the Florida Law Revision Commission, Recommendations and Report on Florida Wrongful Death Statutes (December, 1969). In relevant part, the Commission stated:
Wrongful death acts throughout the United States are in a state of disarray. Florida's is no exception. Some of the results that are possible under the wrongful death legislation of Florida can only be fairly described as deplorable. The Florida courts have increasingly called attention to these defects, and some of the recent judicial calls for legislative help have had a plaintive and desperate quality.
McKibben v. Mallory, 293 So.2d 48, 54-55 (Fla. 1974) (quoting from the Commission's published findings). The Florida Supreme Court went on to say in McKibben that when the new wrongful death act was adopted, it provided a new and improved method of obtaining damages for the tortious destruction of a human life. Id. at 55. See also Martin v. United Security Services, supra.
The legislature spoke clearly when, as a portion of the new statute, it provided a separate section expressing the legislative intent:
It is the public policy of this state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.27 are remedial and shall be liberally construed.
§ 768.17, Fla. Stat. It seems clear to us that the 1972 amendments to the wrongful death statutes were done with the intention of simplifying the process by which survivors could recover their losses when a death was tortiously caused by someone else, and not to convolute further the procedural morass of the earlier statute.
The legislature is presumed to know the existing law when it enacts a statute. And, it is presumed that the legislature was acquainted with the judicial construction of former laws on the subject concerning which some statute is enacted. Stern v. Miller, 348 So.2d 303 (Fla. 1977). Furthermore, once expressed, the legislative will must prevail. Borges v. State, 394 So.2d 1046, 1049 (Fla. 4th DCA 1981) (Hurley, J., specially concurring), aff'd 415 So.2d 1265 (Fla. 1982). Allowing amendments to relate back to the date of the filing of the original complaint is a concept which did not originate in 1937 with the promulgation of the Federal Rules of Civil Procedure.[2] *568 Griffin v. Workman, supra, was decided by the Florida Supreme Court in 1954. The Florida Law Revision Commission spent five years analyzing the defects in the former wrongful death statute and drafting the new one. Additionally, the title of the new wrongful death act, Chapter 72-35, Laws of Florida, stated that it was an "act providing for a right of action on behalf of the survivors and the estate by the personal representative" (emphasis supplied). In Griffin v. Workman, supra, the Florida Supreme Court stated that "a right of action is remedial, while a cause of action is substantive, and an amendment of the former does not affect the substance of the latter." Id. 73 So.2d at 847. We feel quite certain that if the legislature wished to require personal representative status before a wrongful death action could be filed, it would have clearly stated so. Instead, the plain language of the statute is that the public policy of this state is to require the wrongdoer, and not the survivors, to pay for the losses involved in a wrongful death; that it is the intention of the legislature to provide a remedy, a right of action, for a wrongful death.
There remain two minor issues which require only the briefest of attention. One, the delay in the service of the summons on the appellees is, as appellee FPL correctly noted, controlled by Pratt v. Durkop, 356 So.2d 1278 (Fla. 2d DCA 1978). The second, whether Isabel Bermudez and Isabel Torres are one and the same person, is clear on the face of the record. The letters of administration appointing Isabel Torres personal representative as surviving mother were attached to the amended complaint in the name of Isabel Bermudez as surviving mother. This issue relates only to form and adds nothing to the substance of this appeal.
The two orders appealed from are reversed with directions to reinstate the amended complaint, allowing it to relate back to the date the original complaint was filed.
Reversed.
NOTES
[1] "The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death... ." Section 768.20, Florida Statutes (1981).
[2] Tidd, Wm., The Practice of the Courts of the Kings Bench and Common Pleas, pp. 696-715 (London, 1828); Crandall, C., A Treatise on the Practice in Actions at Law in the Circuit Courts and Supreme Court of Florida, § 62 (1940 Supp.); Livingston v. Malever, 103 Fla. 200, 137 So. 113 (1931); La Floridienne, J. Buttgenbach & Co. v. Atlantic Coast Line Railroad Co., 63 Fla. 213, 58 So. 186 (1912); Rule 1.190(c), Fla.R.Civ.P. (1966 amendment); Rule 1.15, Fla. R.Civ.P. (1954); Rule 15, Common Law Rules.